## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

TROY H. NELSON,

          Petitioner,

    vs.                        **Case No. 10-3135-RDR**

STATE OF KANSAS,

          Respondent.

_____

## <u>MEMORANDUM AND ORDER</u>

This case is before the court upon petitioner's request for relief pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury of aggravated robbery, possession of cocaine and failure to obtain a drug tax stamp. In addition, petitioner pleaded guilty to three counts of felony theft. He was sentenced to 228 months. His convictions were affirmed on direct appeal by the Kansas Court of Appeals in 2004. <u>State v. Nelson</u>, 2004 WL 2694252 (Kan.App. 11/24/2004). Review by the Kansas Supreme Court was denied on May 3, 2005. Petitioner filed an action for state habeas relief pursuant to K.S.A. 60-1507. The state district court's denial of relief was affirmed by the Kansas Court of Appeals in 2009. <u>Nelson v. State</u>, 2009 WL 2030381 (Kan.App. 7/10/2009). Review by the Kansas Supreme Court was denied on May 18, 2010. The court has read the trial transcript and the other materials in the record. After careful consideration, the court shall deny the petition for relief.

I.  FACTUAL BACKGROUND

During petitioner's trial, there was evidence that a women's clothing store named "Club Girl" was robbed by two black males on March 1, 2002.  Defendant admitted that he was in the store at the time of the robbery with an acquaintance named Terry Gasper.  The owner of the store, Carole Hall, testified that she was working alone there at the time of the robbery.  Hall stated that defendant rushed to the counter and demanded the cash register.  She replied that there wasn't a cash register, and when defendant came behind the counter she said that she kept the store's money in her purse.  She testified that the other black male also approached the counter and raised a tire iron over her head.  Hall stated that defendant took her purse, cut the telephone cord and left the store along with his accomplice.  They left in a gold four-door car.  Hall called the police from the phone of an adjacent store.  According to evidence presented by the prosecution, the purse (minus cash and credit cards) and the tire iron were later recovered.  Hall testified that defendant had been in the store the previous day with a different person.

Petitioner testified at trial that he went into the store with Terry Gasper on March 1, 2002.  He admitted that he had been in the same store the previous day with a different person.  According to defendant's trial testimony, at the time of the robbery he was in the back of the store.  He said he was surprised that Terry Gasper

was robbing the store. His reaction was to make Gasper leave the store and he left, too, in the gold car which was driven by a female friend. Petitioner testified that he did not see the purse or the tire iron until he was in the car.

There was trial testimony from police witnesses that petitioner was spotted exiting a gold car at a gas station on March 9, 2002 at about 5:00 a.m. There was further testimony that petitioner ran on foot from the police when there was an attempt to make contact with him. Eventually, petitioner was apprehended hiding behind a tree and taken into custody. A piece of crack cocaine was found in his pants pocket when he was searched sometime after his arrest. There was no drug tax stamp on the cocaine.

Police officers testified regarding statements petitioner made during interrogation. Detective Dye testified that petitioner admitted being in the Club Girl store on the two occasions described by the store's owner. According to Dye, petitioner told the police that Terry Gasper waved a tire iron during the robbery on March 1, 2002, although petitioner was not aware of the tire iron before this happened. Petitioner also told the police that he acted as a lookout. He said that he and Gasper left in a car and used the proceeds of the robbery to buy dope and groceries. Petitioner admitted to having a cocaine habit. He also admitted to taking cash registers from two stores on March 8, 2002.

During his trial testimony, petitioner stated that he was

intoxicated during his police interrogation.  But, he denied to the police that he was intoxicated when he was interrogated. Petitioner testified that he ran from the police because he was afraid they would find drug paraphernalia in his car.

An audiotape of petitioner's interrogation was admitted into evidence but not played in open court.

II.  HABEAS STANDARDS

If petitioner is bringing a claim which was decided on the merits by the state court, then this court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, "was based on an unreasonable determination of the facts in light of the evidence presented at trial."  28 U.S.C. § 2254(d)(1)&(2).  State court factual findings are presumed correct, absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).

The Supreme Court has stated that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in our cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court

4

decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"If constitutional error is committed, we look to whether 'the prejudicial impact of constitutional error in [the] state-court criminal trial' rises to the 'substantial and injurious effect standard . . .'" Welch v. Workman, 639 F.3d 980, 992 (10th Cir. 2011) (quoting Fry v. Pliler, 551 U.S. 112, 120-22 (2007)). "[A] 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." Id. (quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995)). "'[W]hen a court is "in virtual equipoise as to the harmlessness of the error" . . . the court should "treat the error . . . as if it affected the verdict . . . ."'" Id. (quoting Fry, 551 U.S. at 121 n.3) (quoting O'Neal, 513 U.S. at 435).

This court may not issue a writ of habeas corpus "simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly." McLuckie v. Abbott, 337 F.3d 1193, 1197 (10th Cir. 2003) cert. denied, 541 U.S. 1074 (2004). We must be convinced that the state court's decision was objectively unreasonable. Id. "This standard does not require our abject deference, . . . but nonetheless prohibits us from substituting our own judgment for that of the state court." Snow

<u>v. Sirmons</u>, 474 F.3d 693, 696 (10th Cir. 2007) (interior quotations and citations omitted).  Furthermore, "[w]e 'may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'"  <u>Welch</u>, 639 F.3d at 992 (quoting <u>House v. Hatch</u>, 527 F.3d 1010, 1025 (10th Cir. 2008)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A).  "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  "The procedural default doctrine and its attendant 'cause and prejudice' standard are grounded in concerns of comity and federalism, and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack."

Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citations and some internal quotation marks omitted).  In other words, procedural default for federal habeas corpus purposes occurs when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedure requirement.  Coleman, 501 U.S. at 729-30.

III.  PETITIONER'S ARGUMENTS

Petitioner raises twenty-eight grounds for relief.  The court shall address these claims mostly in the order in which they are presented.

A.  Improper identification - (Ground One)

Petitioner contends that the prosecutor's examination of Carole Hall during the preliminary hearing was improperly leading and that this tainted Hall's identification of defendant during the trial, allegedly violating petitioner's due process rights.  This argument must be rejected for the following reasons.

First, petitioner did not raise an objection during the preliminary hearing or at trial.  Therefore, it was defaulted from review on direct appeal according to the established rules in Kansas.  Nelson, 2004 WL 2694252 at *1 (citing State v. Williams, 64 P.3d 353 (Kan. 2003) for the proposition that a matter not presented to the lower court will not be considered on appeal and State v. Edwards, 955 P.2d 1276 (Kan. 1998) as applying that proposition to a similar fact situation); see also, State v.

7

<u>Washington</u>, 479 P.2d 833, 836 (Kan. 1971) (failure to object to leading questions at time of preliminary hearing waives that objection to reading the testimony at trial).  As previously mentioned, this court is bound to respect state court rules which limit appellate review and may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.

A claim which has been procedurally defaulted on direct review may be raised in habeas only if petitioner can demonstrate either cause and actual prejudice or that he is actually innocent. <u>Bousley v. U.S.</u>, 523 U.S. 614, 622 (1998).  "'Actual innocence' means factual innocence, not mere legal insufficiency."  <u>Id</u>. at 623.

Petitioner cannot demonstrate cause for his procedural default on this issue.  The only possible cause suggested by petitioner is ineffective assistance of counsel.  This argument was made in petitioner's state habeas proceedings and is repeated in this federal habeas action.

The Sixth Amendment to the Constitution guarantees the right to effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 684-86 (1984).  To establish an ineffective assistance of counsel claim, it must be shown that:  1) counsel's performance was

deficient; and 2) that the deficient performance caused prejudice

to the defendant.  <u>Strickland</u>, 466 U.S. at 687.

> In determining if counsel's performance was deficient, we "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."
> In determining prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." "When a defendant challenges a conviction, the question is whether there is a reasonable probability that absent the errors, the factfinder would have had a reasonable doubt respecting guilt."

<u>Bledsoe v. Bruce</u>, 569 F.3d 1223, 1231 (10th Cir.) <u>cert. denied</u>, 130

S.Ct. 808 (2009)(quoting, in order, <u>Strickland</u>, 466 U.S. at 690,

689, 694 and 695, interior citations omitted).

The court does not believe the failure to object at the

preliminary hearing was unreasonable.  Petitioner argues that the

following testimony given during the preliminary hearing by the

victim, Carole Hall, was elicited by improper leading questions by

the prosecutor:

> Q.  I'd like to talk about two gentlemen that entered that day.  Was there a reason you later called the police?
> A.  Yes.
> Q.  What happened?
> A.  They come into the store.  They were demanding money. They took money and they were threatening to hit me with a club, and . . .
> Q.  Let me stop you right there.  There were two males that came in your store?

A.  Yes.
Q.  Would you describe what they looked like?
A.  They were Afro-Americans. One of them had a mustache.
It looks a lot like him.
Q.  You've just pointed to someone in the courtroom.  Who
did you point to in the courtroom?  Can you describe the
- -
A.  The man in the orange.
Q.  It looks a lot like him?
A.  I think it's him.
Q.  And what leads you to believe it's him?
A.  Because it looks like him.  It looks like one of the
men who came into the store.
Q.  What characteristics about the person sitting in the
orange jump - -
A.  His mustache.  His facial - - I am French speaking,
so my English is not very well, but his face.
Q.  Now you said that there was a second person that came
into the store.  What does that person look like?
A.  Darker complected, a little smaller.
. . . .
Q.  Where are you standing in relation to the defendant
and the second individual when this happened?
A.  I was right in front of the - - I was behind a desk.
Q.  You were behind the desk.  Were those two men on the
other side of the desk?
A.  This right one - - I'm sorry.
Q.  Do you want a cup of water?
A.  This man right here - - he jumped behind the counter.
Q.  What did he say when he jumped behind the counter?
A.  He said he had a gun.  This man right here . . .

Partial transcript of preliminary hearing, pp. 3-6.

The court does not believe the prosecutor was leading the
witness in this testimony.  A leading question is a question which
suggests to the witness the response desired by the counsel asking
the question.  4 WEINSTEIN'S FEDERAL EVIDENCE § 611.06[2][a]
(2010).  The prosecutor repeated the witness' answer once when she
asked:  "It looks a lot like him?"  This is simply asking the
witness to repeat her testimony.  If the question is considered

leading toward that purpose, it is harmless because the same answer was given previously in response to a nonleading question. Further, contrary to petitioner's suggestion, it was not a leading question when the prosecutor asked "what leads you to believe it is him?" Petitioner also contends that the prosecutor improperly led the witness when she asked: "Now let's talk about the defendant, the person with the mustache. What did you do when he came into your store?" This question was posed after the witness had already testified that she thought petitioner was one of the men who entered her store. The prosecutor's question was merely directing the witness to discuss what happened when he came into the store. Petitioner's trial counsel was not deficient for failing to object to this question as leading or to the other questions upon which petitioner makes his argument.

Even if these questions were leading questions, an objection by petitioner's trial counsel, if sustained, would have required the prosecutor merely to rephrase her question. There is no good reason to believe that the witness would have changed her testimony identifying petitioner and describing his actions during the robbery if the prosecutor's questions had been rephrased. Therefore, petitioner cannot demonstrate the prejudice element of an ineffective assistance of counsel claim.

In sum, petitioner cannot demonstrate cause and prejudice for failing to raise this issue in the state court system. Nor can

petitioner make a viable claim of a fundamental miscarriage of justice or actual innocence. Accordingly, the doctrine of procedural default applies to this issue.

Finally, the court notes that petitioner's defense at trial centered upon his actions in the store during the robbery. He denied participating in the robbery, although he did not deny being in the store at the time of the robbery. In this context, the court does not think that any alleged legal error that may have affected the victim's identification of defendant could have impinged upon the fairness of petitioner's trial. For this reason as well, habeas relief is not warranted. <u>Moore v. Marr</u>, 254 F.3d 1235, 1246 (10th Cir.) <u>cert. denied</u>, 534 U.S. 1068 (2001) (federal courts may not interfere with state evidentiary rulings unless the rulings rendered the trial fundamentally unfair).

B.  <u>Other crimes evidence - (Ground Two)</u>

Petitioner's next argument is that the trial court erroneously admitted evidence of bad acts and improperly instructed the jury about such evidence. The evidence was admitted pursuant to K.S.A. 60-455 which provides that evidence that a person committed "a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit a crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion . . . [but] such evidence is admissible when relevant to prove some other material

12

fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." At trial, the presiding judge instructed the jury that "[e]vidence has been admitted tending to prove that the defendant committed crimes other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's motive, intent, preparation, plan and identity." Transcript of jury trial, Vol. IV-A at p. 45. This instruction was given in relation to evidence that defendant stole cash registers from a gas station and a tobacco store on March 8, 2002, several days after the robbery of the Club Girl store.

We reject petitioner's argument for the following reasons. First, petitioner's objections at trial were made on the basis of state evidentiary rules as were the objections that were part of petitioner's direct appeal. No federal law claim was raised for a ruling by the state courts and, hence, the claim has been procedurally defaulted. Even if the rulings incorrectly applied the state law on evidence, that is not grounds for habeas relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Second, petitioner does not cite any legal authority to demonstrate that the state court rulings were "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme

13

Court of the United States." 28 U.S.C. § 2254(d)(1). We acknowledge that "'[t]he Due Process Clause of the Fourteenth Amendment provides a mechanism for relief'" when "'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair.'" Wilson v. Sirmons, 536 F.3d 1064, 1114 (10th Cir. 2008) (quoting Payne v. Tennessee, 501 U.S. 808, 825 (1991)). However, we do not find that the evidence in question was so unfairly prejudicial. See Knighton v. Mullin, 293 F.3d 1165, 1170-72 (10th Cir. 2002) (other crimes evidence deriving from a crime spree was relevant to intent, motive, identity and did not result in a fundamentally unfair trial).

Finally, the court believes the evidence was properly admitted. Contrary to petitioner's argument, K.S.A. 60-455 does not restrict evidence of other crimes to crimes "prior" to the subject of the trial. State v. Carter, 551 P.2d 821, 827 (Kan. 1976). The federal rule is also not restricted to prior crimes. U.S. v. Davis, 636 F.3d 1281, 1298 (10th Cir. 2011). We disagree as well with petitioner that the other crimes did not have sufficient similarity with the crime tried to the jury. There were similarities in time, place, method of escape, and target (i.e., a cash register at a small retail store).

Finally, we reject petitioner's claim that the court's instruction regarding the other crimes evidence was prejudicial or unfair. "A jury instruction, even if erroneous, is not

constitutionally defective unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of fair trial in the constitutional sense or is otherwise constitutionally objectionable as, for example, by transgressing the constitutionally rooted presumption of innocence." <u>Webber v. Scott</u>, 390 F.3d 1169, 1180 (10th Cir. 2004) (citation and internal quotation marks omitted). The jury instruction did not require the jury to find that the evidence of other crimes was evidence of a motive, intent, preparation, plan and identity. The jury was instructed that it could consider whether the other crimes evidence supported those subjects. The instruction barred the jury from considering the other crimes evidence for any other purpose such as defendant's character in order to prove action in conformity therewith. Thus, the court's instruction was not fundamentally unfair.

    C. <u>Petitioner's statements to police - (Ground Three)</u>

Petitioner claims that the trial court erred when it overruled a motion to suppress evidence and allowed defendant's statements to police into evidence. Petitioner contends that his statements were the product of an illegal detention and arrest. Petitioner also contends that he was under the influence of alcohol and drugs at the time of his interrogation. We reject these arguments as proper grounds for relief.

A review of the record shows that the arresting officer had

15

constitutionally defective unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of fair trial in the constitutional sense or is otherwise constitutionally objectionable as, for example, by transgressing the constitutionally rooted presumption of innocence." <u>Webber v. Scott</u>, 390 F.3d 1169, 1180 (10th Cir. 2004) (citation and internal quotation marks omitted). The jury instruction did not require the jury to find that the evidence of other crimes was evidence of a motive, intent, preparation, plan and identity. The jury was instructed that it could consider whether the other crimes evidence supported those subjects. The instruction barred the jury from considering the other crimes evidence for any other purpose such as defendant's character in order to prove action in conformity therewith. Thus, the court's instruction was not fundamentally unfair.

    C. <u>Petitioner's statements to police - (Ground Three)</u>

Petitioner claims that the trial court erred when it overruled a motion to suppress evidence and allowed defendant's statements to police into evidence. Petitioner contends that his statements were the product of an illegal detention and arrest. Petitioner also contends that he was under the influence of alcohol and drugs at the time of his interrogation. We reject these arguments as proper grounds for relief.

A review of the record shows that the arresting officer had

15

attended a squad meeting the night of petitioner's arrest where the officer was informed to look for a gold-colored Mitsubishi Lancer with a Missouri tag 098 PWB because it had been involved in larcenies and robberies. Later during his shift, the officer spotted the vehicle as it turned into a gas station. He saw petitioner exit the vehicle. Petitioner ignored the officer's attempt to get petitioner's attention and entered the store of the gas station. The officer, thinking that petitioner might exit the store through the back, went around the building. Then, he saw petitioner running out of the store.[1] The officer pursued petitioner and, with the help of a flashlight, eventually found him hiding beside a tree. The officer handcuffed petitioner and brought him back to the officer's car. Upon doing a check for warrants, the officer found that petitioner had a suspended license and several bench warrants. So, petitioner was arrested.

The Supreme Court has found that unprovoked flight is a pertinent factor in determining reasonable suspicion for an investigative detention. Illinois v. Wardlow, 528 U.S. 119, 124 (2000). "Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." Id. at 125.

---

[1] Contrary to petitioner's claim, the record indicates that petitioner started running first and then the officer ran in pursuit.

16

Other courts have upheld investigative detentions under factual scenarios similar to petitioner's case.  In U.S. v. Caruthers, 458 F.3d 459, 464-68 (6th Cir.) cert. denied, 549 U.S. 1088 (2006), the police responded to a call of a black male in a red shirt and shorts firing a gun in the air.  The police saw a suspect in a red shirt entering a nearby gas station and asked the suspect to talk. The suspect ran around the corner of the business and hunched down. The court found that there was reasonable suspicion to detain the suspect for investigation.  In U.S. v. Breland, 356 F.3d 787, 790-91 (7th Cir.) cert. denied, 542 U.S. 944 (2004), the police asked to speak to a person who matched the description of a drug dealer. The suspect immediately ran from the police across a street and hid behind a large bush.  The court stated that the police "undoubtedly" had reasonable suspicion to pursue the suspect and stop him for further investigation.  Id. at 791.

The rulings of the trial court upon petitioner's motion to suppress were reasonably based upon the facts and the federal law regarding the Fourth Amendment.  Therefore, they do not provide grounds for habeas relief.[2]

Petitioner's claim that he was intoxicated during his interrogation by the police does not warrant habeas relief for the

---

[2] Petitioner also comments that his arrest violated the Kansas Bill of Rights.  However, as already stated, a violation of state law (if such a violation occurred) does not provide grounds for relief under § 2254.

following reasons. First, on direct appeal the state court found that petitioner failed to properly furnish a record which would allow the court to review the issue. <u>Nelson</u>, 2004 WL 2694252 at *4. "To exhaust state court remedies with respect to a particular constitutional claim, a habeas petitioner must give the state courts a fair opportunity to address the claim." <u>Johnson v. Champion</u>, 288 F.3d 1215, 1224 (10th Cir. 2002). Petitioner's failure to adequately present the claim for state court review requires this court to find that the doctrine of procedural default bars habeas review. Petitioner argues that his appellate counsel rendered ineffective assistance of counsel because he failed to provide the transcript on appeal so that the Kansas Court of Appeals could review the issue. However, as discussed immediately and later in this opinion, petitioner cannot show prejudice from his appellate attorney's deficient performance. Therefore, petitioner's procedural default is not excused.

Even if the court were to review the issue, petitioner's allegations do not warrant relief. Petitioner merely claims that he was "under the influence of alcohol and drugs" at the time of his interrogation. This does not provide grounds by itself to find that petitioner's statements to police were involuntary. Intoxication does not automatically render a statement involuntary. <u>U.S. v. Smith</u>, 606 F.3d 1270, 1276-7 (10th Cir. 2010); see also, <u>U.S. v. Burson</u>, 531 F.3d 1254, 1259-60 (10th Cir. 2008) (valid

waiver although defendant had used methamphetamine and cocaine heavily before his arrest, had not slept for days, could not remember what day it was, rested head on table at times, and was told to "focus" and "stay on target"); U.S. v. Curtis, 344 F.3d 1057, 1066 (10th Cir. 2003) (valid waiver found where defendant was under the influence of marijuana, crack cocaine and alcohol, looked punchy, laid his head on the table, and closed his bloodshot eyes at times); U.S. v. Muniz, 1 F.3d 1018, 1022 (10th Cir.) cert. denied, 510 U.S. 1002 (1993) (valid waiver found where defendant had a blood alcohol level of .268); State v. Gonzalez, 145 P.3d 18, 39-40 (Kan. 2006) (finding a voluntary confession although defendant had used marijuana, not slept for two days, and appeared confused about basic personal information); State v. Norris, 768 P.2d 296, 303 (Kan. 1989) (the fact that an accused has been drinking and using drugs does not per se establish involuntariness); State v. Young, 552 P.2d 905, 911-12 (Kan. 1976) (finding a voluntary confession although defendant was under influence of marijuana and other drugs). The court has reviewed the trial record where petitioner's condition at the time of his interrogation was an issue. There is nothing in the record which persuades the court that the state court findings on this issue were an unreasonable application of federal law.

D. Lesser included offense instruction - (Ground Four)

Petitioner argues that the trial court should have instructed

19

the jury upon the lesser included offense of simple robbery. The Tenth Circuit does not recognize this claim as grounds for habeas relief. The Tenth Circuit has stated that "[o]ur precedents establish a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." <u>Dockins v. Hines</u>, 374 F.3d 935, 938 (10th Cir. 2004); see also <u>Lujan v. Tansy</u>, 2 F.3d 1031, 1036 (10th Cir. 1993) <u>cert. denied</u>, 510 U.S. 1120 (1994) ("a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction"). Therefore, the court shall reject this argument for relief.

E. <u>Failure to instruct regarding intoxication - (Ground Five)</u>

Petitioner's next argument is that habeas relief is warranted because the trial court failed to instruct the jury regarding the defense of voluntary intoxication in relation to the charge of possession of cocaine. The failure to give an instruction does not mandate habeas relief unless it can be shown that the Constitution requires that such an instruction be given or that in the context of the trial the failure to give the instruction "was so fundamentally unfair as to deny the petitioner due process." <u>Tiger v. Workman</u>, 445 F.3d 1265, 1267 (10th Cir. 2006). Petitioner cites no authority to support a claim that the failure to instruct upon a defense of voluntary intoxication was required under the Constitution. Possession of cocaine in violation of K.S.A. 65-4160

is a general intent crime because the statute defining the crime does not require a particular intent which must accompany the prohibited act. See <u>State v. Richardson</u>, 209 P.3d 696, 700 (Kan. 2009) (distinguishing general intent and specific intent crimes); <u>State v. Sterling</u>, 680 P.2d 301, 303 (Kan. 1984) (same). Voluntary intoxication is not considered a defense to a general intent crime. <u>Smith</u>, 606 F.3d at 1281; <u>Sterling</u>, 680 P.2d at 304; <u>State v. Spicer</u>, 42 P.3d 742, 747 (Kan.App. 2002). Hence, petitioner's argument provides no grounds for habeas relief.

    F.   <u>Eyewitness instruction - (Ground Six)</u>

Petitioner argues that the trial court should have given an instruction cautioning the jury regarding possible inaccuracies in eyewitness testimony. Petitioner did not request such an instruction during the trial, however.

As respondent cites, the Supreme Court has commented that it is rare when an improper instruction will justify the reversal of a criminal conviction when no objection has been made in the trial court. <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977). The court must determine whether the lack of an instruction was so fundamentally unfair that petitioner was denied due process. <u>Id.</u> The Supreme Court has also stated in reviewing a petition for writ of habeas corpus:

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure

intelligently the weight of identification testimony that
has some questionable feature.

<u>Manson v. Brathwaite</u>, 432 U.S. 98, 116 (1977).

The issues in this case were typical for a jury trial.  There
is no reason to believe that the jury was misled or confused by the
failure of the trial court to give an instruction regarding
possible flaws in eyewitness testimony.  Therefore, the court finds
that petitioner's due process rights were respected at trial and
that the failure to give a cautionary instruction regarding eye
witness testimony does not warrant habeas relief.

G.   <u>Denial of a new trial - (Ground Seven)</u>

Petitioner's next claim is that the trial court should have
granted petitioner a new trial.  He claims that a new trial was
justified for two reasons:  first, because an officer (Detective
Dye) testified inaccurately that petitioner said during inter-
rogation that "we" ran around the counter at the Club Girl store,
when petitioner actually said "he" (meaning Terry Gasper) ran
around the counter; and, second, because the judge who presided
over petitioner's <u>Jackson v. Denno</u> hearing should have recused
himself.

Neither argument raises a federal constitutional issue
warranting habeas relief.  Petitioner merely contends that he was
entitled to a new trial under state law.  Therefore, habeas relief
should be denied.  Additionally, even if petitioner was attempting
to raise a due process claim, that claim must fail.  Part of

petitioner's interrogation was recorded. The recording was admitted as an exhibit. The jury was urged by petitioner's trial counsel to play the recording during their deliberations because petitioner disputed the officer's account of the recorded interview. Transcript of jury trial, Vol. IV-A at p. 56. Petitioner's right to due process and a fair trial was not violated in these circumstances where a jury was given the opportunity to listen to the witnesses and exhibits and decide how much credence to give the evidence. The failure to grant petitioner's motion for new trial under this scenario could not be a denial of due process.

As for the question of recusal, petitioner asserts that a new trial should have been granted because there was an appearance of bias with regard to the judge in his <u>Jackson v. Denno</u> hearing. That judge stepped off of petitioner's case and the case was assigned to a different judge for trial. Petitioner describes the reasons for changing the judge in his case prior to trial as follows: "[The decision to reassign the judge] was made due to the fact that [when] the Judge had been with the District Attorney's Office, he had been instrumental in ensuring that [the prosecutor] had . . . addition[al] security around her home o[]stensibly to protect her from the defendant, Troy Nelson when he had apparently written her letters during an unrelated case which [the prosecutor] interpreted as threatening." Doc. No. 1 at p. 17.

This is not sufficient to demonstrate a denial of due process.

"[T]he Supreme Court's case law has not held, not even in dicta, let alone 'clearly established,' that the mere appearance of bias on the part of a state trial judge, without more, violates the Due Process Clause." Welch v. Sirmons, 451 F.3d 675, 700-01 (10th Cir. 2006) cert. denied, 551 U.S. 1133 (2007) (quoting, Johnson v. Carroll, 369 F.3d 253, 360 (3rd Cir. 2004)); see also, Del Vecchio v. Illinois Department of Corrections, 31 F.3d 1363, 1371-72 (7th Cir. 1994) (due process does not require recusal of judge in murder prosecution who had previously prosecuted the defendant for a prior murder); Fero v. Kerby, 39 F.3d 1462, 1478-80 (10th Cir. 1994) cert. denied, 515 U.S. 1122 (1995) (appearance of bias from prosecution's employment of judge's son as a law clerk and victim's employment of judge's brother-in-law in civil action against petitioner did not create a due process issue requiring habeas relief). Accordingly, the state court's denial of relief upon petitioner's motion for a new trial did not amount to a clear violation of federal constitutional rights.

H.    Ineffective assistance of trial counsel – (Ground Eight)

In general, petitioner argues that his trial counsel failed to provide effective assistance of counsel because he failed to file important motions, failed to call important witnesses, failed to investigate properly, and failed to make objections to matters where it was important to preserve issues for appeal. The court shall now address petitioner's specific claims.

1. <u>Failure to file motion to recuse prosecutor - (Ground Nine)</u>

Petitioner argues that his trial counsel should have filed a motion to remove the prosecutor from the trial of his case. The prosecutor had previously litigated other criminal matters against petitioner. During that litigation petitioner wrote allegedly threatening letters to the prosecutor. When petitioner escaped from custody, authorities decided to place police protection around the prosecutor's home. Petitioner contends that the enmity felt by the prosecutor because of these events motivated her to hide and manipulate evidence, and to admit hearsay evidence and perjured testimony during the case under review here.

The court has already set forth the standards for demonstrating ineffective assistance of counsel. To capsulize, petitioner must: 1) prove deficient performance by his trial counsel; and 2) prove prejudice as a result of the deficient performance. The court rejects petitioner's claim that his trial counsel was constitutionally ineffective because he failed to file a motion to remove the prosecutor. Petitioner has not established that a motion to remove the prosecutor would have been successful. Therefore, petitioner cannot satisfy either requirement for proving ineffective assistance of counsel.

As discussed in petitioner's state habeas proceedings, petitioner cannot establish that the prosecutor suffered a conflict of interest that made fair treatment of petitioner unlikely.

Nelson, 2009 WL 203091 at *3-4. "Prosecutors need not be empty vessels, completely devoid of any non-case-related contact with, or information about, criminal defendants." U.S. v. Lilly, 983 F.2d 300, 310 (1st Cir. 1992). The prosecutor had no personal interest in the crimes alleged by the State. Petitioner's argument relies upon the letters he sent in relation to a prior prosecution. These letters are not sufficient to prove actual prejudice by the prosecutor. See Resnover v. Pearson, 754 F.Supp. 1374, 1388-89 (N.D. Ind. 1991) (a criminal defendant cannot cause the recusal of his prosecutor by threatening the prosecutor or having him threatened); see also, Lilly, 983 F.2d at 310 (observing that courts have not found due process violations when a prosecutor is simultaneously representing private clients who are suing the defendant on related matters or when a prosecutor is simultaneously the target of a civil action filed by an associate of the criminal defendant). Nor is an appearance of a conflict of interest sufficient to warrant recusal. See generally, U.S. v. Lorenzo, 995 F.2d 1448, 1453 (9th Cir. 1993) (U.S. Attorney's Office did not have to recuse from prosecution for sending false IRS 1099 forms even though members of the office received the forms because there was no showing of actual prejudice); Lilly, 983 F.2d at 310 (upholding conviction even though prosecutor was given information critical of defendant by an attorney in the civil division of the office who had a claim in bankruptcy against the defendant).

Moreover, petitioner does not make a colorable claim that the prosecutor engaged in misconduct; that a different prosecutor would have acted differently; or that the alleged misconduct had an effect upon the result of his trial. Hence, petitioner cannot establish prejudice from his counsel's alleged deficient performance. Petitioner has not proffered significant support for his claim that the prosecutor knowingly admitted perjured testimony. In addition, while petitioner alleges that the prosecutor admitted a purse into evidence that did not belong to the victim, there is no substantiation for this claim. Although the victim did not identify the purse during the trial, a crime scene investigator and a witness who observed the purse in the street provided testimony which was adequate for the trial court to admit the purse into evidence. Transcript of jury trial, Vol. II at pp. 48-52 and Vol. I at pp. 77-82. Thus, the only specific allegation of prejudice advanced by petitioner is rebutted in the record. Finally, petitioner does not deny that the victim's purse was stolen. So, any alleged error regarding the authentication of the purported stolen purse does not support a claim of prejudice, innocence or fundamental unfairness.

2. <u>Failure to move to recuse the judge in the</u> <u>suppression hearing - (Ground Ten)</u>

As noted before, the judge who presided over and decided the suppression issues in petitioner's <u>Jackson v. Denno</u> hearing was reassigned and a different judge handled petitioner's trial.

Petitioner claims his counsel should have asked that the judge recuse himself before the suppression hearing. The court has discussed this matter in relation to petitioner's previous claim that he should have received a new trial. It is sufficient to state here that petitioner does not set forth a basis to find that his counsel performed deficiently or unreasonably by failing to ask for recusal of the judge. Judges must often consider the cases of criminal defendants with whom they have had prior cases or hearings which have exposed the judges to unflattering information regarding those defendants. Prior knowledge of a criminal defendant's bad acts does not provide reasonable grounds for recusal. E.g., Del Vecchio, 31 F.3d at 1371-72 (judge presiding over murder case prosecuted the defendant for a prior murder). That is all that petitioner alleges here. Petitioner also argues that the judge exhibited favoritism toward the State because of his rulings. However, it is well-settled that adverse rulings (even if erroneous) do not provide grounds for recusal. Glass v. Pfeffer, 849 F.2d 1261, 1268 (10th Cir. 1988); State v. Ruebke, 731 P.2d 842, 852 (Kan. 1987); State ex rel. Miller v. Richardson, 623 P.2d 1317, 1322 (Kan. 1981). In any event, petitioner can hardly contend that his counsel performed deficiently because he was insufficiently clairvoyant to anticipate the judge's adverse rulings in the Jackson v. Denno hearing. The record does not provide reasonable grounds to argue for recusal. Therefore, this claim of ineffective

assistance must be denied.

### 3. Failure to object to evidence of recorded interrogation – (Ground Eleven)

Petitioner argues that his counsel rendered ineffective assistance of counsel because he did not object to the jury considering the audiotape recording of his police interrogation even though the recording was not played in open court. Petitioner argues that there was no foundation for admitting the audiotape; that the prosecutor may have manipulated the tape; that a prosecution witness misrepresented what was said on the tape; and that the jury should not have been permitted to listen to the tape when it was not played during the trial. The court rejects these contentions as grounds for habeas relief.

During petitioner's trial testimony he stated that he listened to the audiotape and he wanted to let everybody hear it. Transcript of jury trial, Vol. III at p. 63. He mentioned that he got sick to his stomach during the interrogation and told the jury that this was mentioned in the middle of the tape. Id. at p. 65. This supported his claim that he was intoxicated during his interrogation. He also testified that he listened to the tape and recognized his voice. Id. at p. 109. As mentioned before in this opinion, in his closing argument petitioner's trial counsel asked the jury to listen to the tape during deliberations.

Under these circumstances, it was reasonable for petitioner's trial counsel not to oppose giving the jury access to the audiotape

during deliberations. Taking this position is consistent with petitioner's trial testimony and counsel's closing argument. It is also consistent with petitioner's claim that the audiotape differed from the account of it made by one of the police officers who testified for the prosecution. Finally, courts have held that trial courts have the discretion to permit such exhibits to go into the jury room for deliberations even if the recordings have not been played in open court. U.S. v. Magana, 118 F.3d 1173, 1183-84 (7th Cir. 1997) cert. denied, 522 U.S. 1139 (1998); State v. Evans, 639 S.W.2d 792, 794-95 (Mo. 1982); see also, State v. Smith, 573 N.W.2d 515, 521 (S.D. 1998) (citing numerous cases from various jurisdictions for "majority rule" that a jury may review a videotaped or audiotaped confession during deliberations where the recording is a properly admitted trial exhibit).

Petitioner's claim that the audiotape may have been manipulated is a bald assertion which does not provide colorable support for ineffective assistance of counsel. Furthermore, while petitioner argues that his counsel should have objected to the foundation laid to admit the audiotape, he does not assert that the prosecution ultimately would have failed to make an adequate foundation if an initial objection to foundation had been sustained. Therefore, petitioner cannot prove prejudice from the failure of his trial counsel to object to the foundation laid for the admission of the audiotape.

For all of these reasons, the court rejects petitioner's claim that his counsel was constitutionally ineffective in failing to object to the admission of the audiotape and to allowing the tape to go into the jury room even though it was not played in open court.

    4.  <u>Questioning of state witnesses/strategy – (Ground Twelve)</u>

This section of the petition is labeled "GROUND TWELVE: Was Petitioner's attorney helping convict the defendant by asking questions to the State's witnesses that incriminated the defendant, and was it sound strategy." Below this heading, petitioner contends that his trial counsel was ineffective for a variety of reasons. He argues that his counsel should have called Renee Gronniger as a witness. She is alleged to have been in the gold car with petitioner immediately before and after the Club Girl robbery. Petitioner also argues that his counsel should have called his brother Denzel Jones as a witness as well as an investigator who interviewed the victim. Petitioner further claims that his trial counsel should have introduced for admission a taped statement from Terry Gasper. Petitioner also contends that his counsel should not have called Adam Kraft as a witness and that he failed to make a number of objections to evidence presented by the prosecutor or instructions by the court.

The Tenth Circuit has held: "Generally, the decision whether to call a witness rests within the sound discretion of trial

counsel." <u>Jackson v. Shanks</u>, 143 F.3d 1313, 1320 (10th Cir.) <u>cert. denied</u>, 525 U.S. 950 (1998). Strategic decisions are constitutionally ineffective only if they are "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy." <u>Fox v. Ward</u>, 200 F.3d 1286, 1296 (10th Cir. 2000) <u>cert. denied</u>, 531 U.S. 938 (quotation omitted). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Strickland</u>, 466 U.S. at 690-91. When considering a claim of a failure to investigate, "[t]he focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result." <u>United States ex rel. Cross v. DeRobertis</u>, 811 F.2d 1008, 1016 (7th Cir. 1987). Usually, this information is presented through the post-trial testimony of the potential witnesses. <u>Id</u>. If the potential witnesses do not testify, the petitioner should explain why or give some demonstration of the content of the testimony they would have given if called at trial. <u>Lawrence v. Armontrout</u>, 900 F.2d 127, 130 (8th Cir. 1990).

Petitioner has not proffered with any detail a basis for

finding that Renee Gronniger, Denzel Jones or the unnamed investigator would have provided testimony which, with reasonable probability, would have changed the outcome of his trial. None of those persons were in the Club Girl store at the time of the robbery so that they could testify as to petitioner's actions during the robbery. The investigator's testimony (which petitioner appears to view as "expert" testimony) may have been disallowed on the grounds that the investigator could not render a judgment upon the victim's credibility. In Kansas, a witness may not express an opinion on the credibility of another witness. <u>State v. Drayton</u>, 175 P.3d 861, 871 (Kan. 2008) (citing <u>State v. Jackson</u>, 721 P.2d 232 (Kan. 1986)). Moreover, Adam Kraft (a police officer) gave the type of testimony that petitioner suggests the investigator may have given, that is, testimony that the victim had made prior inconsistent statements. Thus, testimony from the investigator could have been unnecessary or duplicative. Petitioner complains that on cross-examination the prosecutor was allowed to lead Mr. Kraft through his testimony. If an objection had been made, however, there is no reason to believe that the prosecutor would have been blocked from obtaining the same testimony without leading questions. Therefore, petitioner can show no prejudice from the nature of the examination. A recorded statement taken from Terry Gasper would be considered hearsay, assuming that Gasper was available to testify in person. There is nothing in the record to

show that Gasper was unavailable to testify.

As mentioned, petitioner's trial counsel used the testimony of Adam Kraft to point out inconsistencies in the victim's statements. Kraft also testified that no fingerprints were found around the counter of the store. Thus, there were strategically sound reasons for presenting Kraft's testimony. Petitioner argues that his trial counsel should have objected to hearsay testimony regarding the victim's purse. But, the record permitted petitioner's counsel to argue that the victim did not identify her purse. An objection may have led the prosecution to strengthen the record on that point. In any event, petitioner has never denied that the victim's purse was taken in the robbery. Thus, any mistake by his counsel in failing to make an objection was not prejudicial to petitioner's case. Finally, petitioner asserts that his counsel did not object to a jury instruction that petitioner had a weapon. The court cannot find that such an instruction was given to the jury.

In conclusion, petitioner provides no grounds to find that his trial counsel's performance was so unreasonable or prejudicial as to amount to ineffective assistance of counsel.

        5.   Failure to object to prosecutor's statements – (Ground Thirteen)

Petitioner argues that his trial counsel performed deficiently when he did not object to a statement from the prosecutor to the trial judge that a security camera tape from the Club Girl store was blank. Petitioner claims that the tape was not blank and that

34

the victim, Carole Hall, made conflicting statements regarding whether the security camera was operating at the time of the robbery.

In the court's review of the victim's trial testimony, we found no statement that the security camera was recording at the time of the robbery. Transcript of jury trial, Vol. II at pp. 12, 18, and 23. The victim testified that on <u>the day before the robbery</u>, when petitioner entered the Club Girl store:

> "that day I was so busy, I was doing my taxes, 'cause I have to file taxes every month. So I was - - I was recording, I was very busy working . . ."

<u>Id</u>. at 20. This statement is not inconsistent with the victim's testimony that her security camera was not being recorded <u>on the day of the robbery</u>. In this statement it is not even clear that the victim was speaking of the security camera when she said she was recording. In any event, the tape was admitted into evidence, so the parties and the jury had an opportunity to review the tape. Under these circumstances, the court cannot conclude that petitioner's trial counsel had good grounds to object or that an objection might have changed the outcome of petitioner's trial. Therefore, the court shall reject this argument for habeas relief.

6. <u>Failure to call witnesses during the Jackson v. Denno hearing - (Ground Twenty-five)</u>[3]

Petitioner argues that his counsel should have called

_____

[3] This is the second "Ground Twenty-Five" listed in the petition. Doc. No. 1 at p. 38.

witnesses who would have testified that petitioner was intoxicated at the time of his arrest and interrogation. However, as this court has noted, intoxication is not automatic grounds to suppress a statement made during interrogation. Petitioner has not proffered evidence which convinces the court that the failure to call these witnesses was unreasonable or that the decision caused prejudice to defendant's case.

I. <u>Trial court's failure to appoint substitute counsel – (Ground Fourteen)</u>

Petitioner argues that he and his trial counsel had a complete failure to communicate on several occasions during the trial. At the conclusion of his trial counsel's cross examination of a police officer who interrogated petitioner, petitioner objected that he had questions he wanted to ask the witness. When he was told that his counsel was representing him and that he should talk to his attorney, petitioner said the "whole courtroom is set up." Transcript of jury trial, Vol. IV at p. 7. Petitioner repeated this comment, while his trial counsel asked for a chance to consult with petitioner. The jury was excused from the courtroom and petitioner continued to complain of a set up and of a "kangaroo court." <u>Id</u>. at p. 8. The trial judge excused petitioner from the courtroom and then gave his trial counsel an opportunity to consult with petitioner. The witness was then called back as a defense witness and petitioner's trial counsel asked more questions. Before this happened, petitioner was questioned by the trial judge.

Petitioner stated that he would act appropriately in the courtroom. He apologized and stated that he "just didn't understand what was going on." Id. at p. 13.

The trial transcript does not support petitioner's claim that he asked for new counsel. Even if he did, petitioner does not offer good cause to believe that his Sixth Amendment right to counsel or that his right to a fair trial was denied by a denial of new counsel at that time in the proceedings. In general, a court is obliged to appoint new counsel if there is a conflict of interest or a "complete breakdown of communication or an irreconcilable conflict" which may lead to an inadequate defense. U.S. v. Johnson, 961 F.2d 1488, 1490 (10th Cir. 1992). "Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney . . . rather there must be a total breakdown in communications." U.S. v. Lott, 310 F.3d 1231, 1249 (10th Cir. 2002) cert. denied, 538 U.S. 936 (2003) (citations omitted). "[T]o prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." Id. "[G]ood cause for substitution of counsel is not shown by the fact that counsel refused to structure a defense as defendant wanted." U.S. v. Anderson, 189 F.3d 1201, 1211 (10th Cir. 1999).

The record reflects a disagreement between petitioner and his counsel. But, petitioner apologized for his outburst, said he misunderstood the situation and did not object to proceeding with his trial counsel. The record does not demonstrate a denial of his constitutional right to counsel or right to a fair trial. Therefore, the court rejects this claim for habeas relief.

J. <u>Identification of the victim's purse and crowbar/tire iron – (Grounds Fifteen and Twenty-Six)</u>

Petitioner argues that his right to a fair trial was denied because the trial court permitted the admission of the victim's purse into evidence as well as evidence of the crowbar/tire iron without testimony from the victim of the robbery identifying the two items. This claim was made in petitioner's state habeas proceedings. The state district court analyzed petitioner's claim and concluded there was no error in admitting the exhibits. The court made reference to the testimony of the crime scene investigator who collected the items and testified that the victim identified the purse and also described the tire iron. <u>Nelson v. State of Kansas</u>, Case No. 05-CV-3704 (18th Judicial District 9/26/2007) at pp. 15-16 (referring to transcript of jury trial, Vol. II at p. 49). The court also referred to the testimony of a witness (Virginia Robinett) who first discovered the purse and the crowbar/tire iron in the street. <u>Id</u>. (referring to transcript of jury trial, Vol. I at pp. 76-79). This witness testified that her sister-in-law gathered up the purse and the crowbar and called the

police and the victim.  Petitioner contends that the trial court allowed hearsay statements to be made in the testimony of these two witnesses.  In this order, the court has already noted that we may not provide habeas corpus relief on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir.), cert. denied, 531 U.S. 1020 (2000).  "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint."  United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir.1990).

Upon our review of the record, we do not believe the evidentiary rulings of the trial court denied petitioner a fundamentally fair trial.  Petitioner has never denied that the victim's purse was stolen from her by threat of force.  His defense was and remains that he did not participate in the crime, although he was present during its commission.  Therefore, any mistake with regard to the admission of the alleged purse or of testimony used to authenticate the purse as relevant evidence is not so material to the important issues in the trial that it would cause prejudice to defendant.  Moreover, in the federal system it has been held that the burden of proof for authentication is "slight." U.S. v. Reilly, 33 F.3d 1396, 1404 (3rd Cir. 1994).  Flaws as to

authentication go to the weight of the evidence, not its admissibility. See <u>U.S. v. Humphrey</u>, 208 F.3d 1190, 1204 (10th Cir. 2000). The Kansas rules of evidence are not contrary to these principles.

For these reasons, we find that the trial court's admission of exhibits in this case was not error which warrants a grant of habeas relief.

K. <u>Prejudicial joinder of charges - (Ground Sixteen)</u>

Petitioner contends that his constitutional right to a fair trial was violated because the court did not sever the trial of the robbery charge from the trial of the drug charges. The issue on habeas review is whether improper joinder resulted in "'prejudice so great as to deny a defendant his . . . right to a fair trial.'" <u>Webber v. Scott</u>, 390 F.3d 1169, 1178 (10th Cir. 2004) (quoting <u>Lucero v. Kerby</u>, 133 F.3d 1299, 1314 (10th Cir.) <u>cert. denied</u>, 523 U.S. 1110 (1998)). This places an "onerous burden" upon petitioner. <u>Lucero</u>, 133 F.3d at 1314 (quoting <u>Herring v. Meachum</u>, 11 F.3d 374, 378 (2nd Cir. 1993)). "Such prejudice may arise when there is a great disparity in the amount of evidence supporting the charges or when the jury is likely to confuse the evidence or infer a criminal disposition on the part of the defendant." <u>Webber</u>, 390 F.3d at 1178.

We do not believe that petitioner has satisfied his burden of showing prejudice in this case. The evidence regarding the robbery

charge and the drug charges was separate and distinguishable, although there was evidence that petitioner admitted he used money from the robbery to purchase drugs. Therefore, the jury should not have confused the charges and should have been able to obey the trial court's instruction to give the charges separate consideration. See Transcript of jury trial, Vol. IV-A at p. 44 (jury instruction to decide each charge separately). The evidence regarding one of the charges did not overwhelm the other charges. Nor was any charge so inflammatory that joinder should have been prejudicial to petitioner. Petitioner's broadly stated assertions of prejudice are not persuasive to the court. Therefore, the court rejects petitioner's misjoinder claims.

L. Prosecutorial misconduct

Petitioner makes various claims of prosecutorial misconduct allegedly motivated by a prosecutorial grudge or vendetta. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). "A substantive due process violation occurs when government conduct violated fundamental fairness and is shocking to the universal sense of justice." Lilly, 983 F.2d at 309 (interior quotations omitted).

1. Perjured testimony - (Ground Eighteen)

According to petitioner, because of the prosecutor's grudge,

the prosecutor lied or manipulated evidence and elicited perjured testimony. Petitioner makes reference to alleged inconsistent statements by the victim, as well as testimony from the victim that was inconsistent with the testimony of other witnesses. Thus, petitioner actually attempts to support only his claim that the prosecutor elicited perjured testimony.

Knowing use of perjured testimony by the prosecution violates a defendant's due process rights. To demonstrate such a violation, a defendant must show: 1) that the testimony was false, 2) that it was material, and 3) that it was knowingly and intentionally used by the government to obtain a conviction. U.S. v. Wolny, 133 F.3d 758, 762 (10th Cir. 1998). "Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." Tapia v. Tansy, 926 F.2d 1554, 1563 (10th Cir.) cert. denied, 502 U.S. 835 (1991).

The court has reviewed the record in this case, including the transcript of the preliminary hearing and the trial. Petitioner complains that the victim's testimony was inconsistent regarding whether petitioner had a gun. The court has examined this testimony. It is not blatantly inconsistent. The victim was unsure because she never saw a gun, but she thought petitioner may have carried one inside his clothing. In any event, the tire iron was a "dangerous weapon" used to threaten the victim. The use of

the tire iron was sufficient to warrant a conviction for aggravated robbery. So, any testimony regarding a gun was not essential for a conviction.

Petitioner also complains about alleged inconsistent testimony in relation to whether the security camera was recording. The court has already discussed why this testimony was not inconsistent. Finally, petitioner contends that the victim gave false testimony that during the robbery a phone was taken from the store and thrown outside. Petitioner cannot establish that this was perjured as opposed to mistaken testimony. Nor can petitioner establish that this testimony was material.

In sum, petitioner's claims are not sufficient to demonstrate the knowing presentation of perjury or any other form of prosecutorial misconduct which was so damaging that it denied petitioner's rights to due process or a fundamentally fair trial.

2. <u>Prosecutorial misconduct - Presentation of hearsay testimony - (Ground Nineteen)</u>

As mentioned earlier in this order, Virginia Robinett testified in petitioner's trial that she heard a clang and saw a purse and a long metal object in the street. Transcript of jury trial, Vol. I at pp. 76-77. It appeared the objects had been tossed from a car. She told her sister-in-law, whom she had been visiting. Her sister-in-law gathered the items and called the police and the owner of the purse. <u>Id</u>. at pp. 78-79. Petitioner argues that this and other testimony in the trial was hearsay and

43

provided an improper foundation for the admission of the purse which was alleged to have been stolen from the victim. Petitioner also argues that the sister-in-law should have been called as a witness and certain other evidence should have been presented. Although petitioner asserts that this testimony and evidence was withheld, he provides no reason why it could not have been presented in his defense. Nor does he provide any grounds to believe the evidence would have been exculpatory.

While petitioner labels this prosecutorial misconduct, petitioner is simply restating a claim that trial errors were committed by the judge or his defense counsel. These claims have been discussed and rejected by the court previously. We reject the claim of prosecutorial misconduct as well.

### 3. Prosecutorial misconduct - destroying or hiding evidence - (Ground Twenty-one)

Petitioner contends that the prosecutor "destroyed evidence" or hid evidence that would have helped petitioner to prove his innocence. To establish a violation of Brady v. Maryland, 373 U.S. 83, 87 (1963), a habeas petitioner must demonstrate: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the government suppressed the evidence either willfully or inadvertently; and (3) prejudice ensued from the suppression, i.e., the suppressed evidence was material to guilt or punishment. Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Petitioner's specific claims are: 1) the prosecutor did not

produce a taped conversation of Terry Gasper where he made a statement admitting that he took the purse and that defendant took the front license tag off a car thinking they were going to shoplift clothes from the Club Girl store; 2) the prosecutor "did not submit" photo evidence of individuals (other than petitioner) using the victim's checkbook and credit cards at stores; 3) the prosecutor "refused to play" the video tape from the Club Girl store's security camera; 4) the prosecutor "failed to produce the cellphone" that was supposedly inside the stolen purse; 5) the prosecutor "failed to produce" Terry Gasper as a witness; 6) the prosecutor failed to tell the court the truth about a deal she made with Terry Gasper; 7) the prosecutor failed to produce the real purse involved in the robbery; and 8) the prosecutor failed to produce Sharlotte Webber, the person who found the purse.

Petitioner's claim must be rejected for two reasons. First, petitioner does not allege that the evidence was suppressed or hidden from petitioner. Petitioner makes no colorable claim that the witnesses and items of evidence identified in the above-listed arguments were willfully or inadvertently withheld by the prosecution. Second, petitioner does not make a convincing and specific proffer, as opposed to a bald claim, that the testimony and evidence would have been exculpatory or material to proving petitioner's innocence.

4. <u>Prosecutorial Misconduct - Letter allegedly written by petitioner to Terry Gasper - (Ground Twenty-four)</u>

Petitioner alleges that in connection with sentencing proceedings the prosecutor unfairly influenced the judge by giving him a letter supposedly written by petitioner to Terry Gasper. He alleges that the letter was false and never proven to be from him. He also alleges that his counsel should have objected to the letter.

The Kansas Supreme Court has observed that the evidentiary rules are relaxed for sentencing proceedings:

> There is a marked difference between application of the rules of evidence in that portion of the trial dedicated to the determination of guilt or innocence and that portion of the trial dedicated to sentencing. This court has never required a strict application of the rules of evidence in the sentencing phase of a trial. To do so in many instances would deprive the court of the information necessary to fulfill its responsibilities. . .

State v. Sims, 887 P.2d 72, 80 (Kan. 1994).

The letter referred to by petitioner is included in the state court file. Petitioner had fair notice of the letter and commented upon it during the sentencing hearing. Transcript of motion for new trial and sentencing hearing, p. 39. In his comments he did not deny writing the letter. Under these circumstances and in light of the relaxed rules of evidence in state court sentencing hearings, the court finds no grounds for habeas relief.

M. <u>Failure to give a curative jury instruction - (Ground Twenty-two)</u>

Petitioner alleges that a police officer (Detective Dye) who testified regarding petitioner's statements during interrogation

46

misstated what petitioner said to petitioner's detriment at trial, and that this misstatement is evident from the audio recording of the interrogation. He alleges that his trial was unfair because the trial judge did not admonish the witness or inform the jury of the alleged discrepancy.

The jury was instructed that they should "consider and weigh everything admitted into evidence" and that it was for them "to determine the weight and credit to be given to the testimony of each witness." Transcript of jury trial, Vol. IV-A at p. 43. Petitioner's trial counsel in closing argument asked the jury to listen to the tape of petitioner's interrogation because the tape would reveal the error in the police officer's testimony. Id. at 56. Under these circumstances, the court is convinced that petitioner was not denied a fair trial because of the absence of an additional jury instruction.

N. Ineffective assistance of appellate counsel- (Ground Twenty-three)

Petitioner argues that his appellate counsel was constitutionally ineffective for the following reasons: 1) he failed to raise the issue of insufficient evidence on appeal; 2) he did not provide a transcript of the Jackson v. Denno hearing to support petitioner's appeal; 3) he did not make citations to the record to support petitioner's claim regarding the need for a jury instruction concerning the reliability of eyewitness testimony; 4) he did not make a citation to the record to support his claim of

47

inconsistency between the police officer's account of petitioner's statements during interrogation and the audiotape of the interrogation; and 5) he did not explain how petitioner suffered prejudice from the failure of the judge to recuse himself from the Jackson v. Denno hearing.

A habeas petitioner may succeed upon a claim of ineffective assistance of appellate counsel if he shows 1) his appellate counsel's performance was somehow deficient, and 2) that he suffered prejudice as a result of this deficient performance. Coronado v. Ward, 517 F.3d 1212, 1216 (10th Cir.) cert. denied, 129 S.Ct. 134 (2008). Our review of appellate counsel's performance must be "highly deferential." U.S. v. Challoner, 583 F.3d 745, 749 (10th Cir. 2009). Petitioner "bears a heavy burden." Id. (interior quotation omitted).

We reject petitioner's claim for the following reasons. First, we are convinced that the Kansas appellate courts would have rejected any sufficiency of the evidence claim had petitioner's appellate counsel raised the issue. On direct appeal, courts examine the evidence in the light most favorable to the prosecution and determine whether a rational factfinder could have found petitioner guilty beyond a reasonable doubt. State v. Trautloff, 217 P.3d 15, 21 (Kan. 2009). The testimony of the victim in this case could have been accepted by a rational jury and this would have been considered sufficient evidence to support the verdict.

See U.S. v. Beverly, 99 F.3d 570, 571 (3rd Cir. 1996) (testimony of victim was sufficient to establish use of a firearm as an element of a crime, although firearm was not recovered); Chandler v. Richards, 935 F.2d 915, 918 (7th Cir. 1991) (eyewitness identification of alleged robber makes conviction entirely rational); U.S. v. Dodge, 538 F.2d 770, 782 (8th Cir. 1976) (it is "well established" that the uncorroborated testimony of a single witness may be sufficient to sustain a conviction"); Smith v. State, 2004 WL 719255 at *2 (Kan.App. 4/2/2004) (sustaining aggravated robbery conviction on basis of victim's testimony).

Petitioner does not convincingly describe how a transcript of the Jackson v. Denno hearing or a further explication of his arguments regarding that hearing would have led to a successful appeal. This court has evaluated petitioner's arguments regarding the Jackson v. Denno hearing already in this opinion. We have rejected them. Petitioner cannot blame the performance of his appellate counsel for the failure of these arguments in this court.

The court has also reviewed petitioner's arguments regarding the inconsistency between the police detective's account of petitioner's statements in interrogation and the audio tape of the interrogation. We have rejected those arguments and believe this would have occurred on direct appeal regardless of the performance of petitioner's appellate counsel. Similarly, petitioner's claims regarding the inconsistencies in the victim's testimony and prior

statements was a matter for the jury to weigh. On direct appeal, the Kansas Court of Appeals held that a failure to give an eyewitness instruction was not clearly erroneous when petitioner admitted he was in the Club Girl store when the robbery was committed. <u>Nelson</u>, 2004 WL 2694252 at *7. There is no reason to believe that this holding would have changed if petitioner's appellate counsel had made citations to the record regarding the victim's alleged inconsistent statements. In general, Kansas appellate courts find that the function of weighing the evidence and passing on credibility of witnesses belongs to the jury, not to the appellate court. <u>State v. Moore</u>, 4 P.3d 1141, 1444 (Kan. 2000).

In sum, the court finds that petitioner cannot prove that he suffered prejudice from his appellate counsel's alleged deficient performance.

O. <u>Sufficiency of the evidence - (Ground Twenty-seven)</u>

As mentioned in the previous section, the court believes the evidence presented to the trial court was sufficient to support the verdict. We reject petitioner's claim to the contrary.

P. <u>Judicial misconduct - (Ground Twenty-Five)</u>[4]

Petitioner reiterates his claim that he should have been granted a new trial because of the past history between petitioner

---

[4] This is the first "Ground Twenty-Five" listed in the petition. Doc. No. 1 at p. 37.

and the prosecutor.  Petitioner alleges that this past history led to a vindictive prosecution and favoritism by the trial court toward the prosecution.  Petitioner believes this explains adverse rulings from the trial judge and the longer sentence he received as compared to Terry Gasper.  The court has carefully reviewed the trial transcript and the sentencing transcript.  Nothing in the record persuades the court that petitioner was denied a fair trial because of judicial prejudice.  As the court has previously noted, adverse rulings are not considered adequate proof of judicial bias.  In any event, the trial judge's rulings are easily justified in this case.  Terry Gasper was sentenced by a different judge.  He pleaded guilty and was convicted of fewer crimes.  These and other circumstances beyond bias could justify the different sentences.

Q.  <u>Disparity in sentences - (Ground Twenty-eight)</u>

Petitioner alleges that he is entitled to habeas relief because of the large difference between his sentence and the sentences given to others involved in the same robbery, such as Terry Gasper.  This is not a proper argument for habeas relief.  Petitioner does not argue that his sentence, itself, is illegal or unconstitutional.  His argument that his sentence is unconstitutional when contrasted to the sentence given to another defendant has been rejected by other courts.  <u>U.S. v. Rackstraw</u>, 7 F.3d 1476, 1482-83 (10th Cir. 1993) (no Eighth Amendment violation from disparate sentences when one defendant receives a benefit for

cooperation); <u>Dellinger v. Bowen</u>, 301 F.3d 758, 767-68 (7th Cir. 2002) <u>cert. denied</u>, 537 U.S. 1214 (2003) (no Supreme Court precedent which finds a violation of equal protection to receive a greater sentence than one's partner in crime); <u>Harris v. Saffle</u>, 25 Fed.Appx. 756, 758 (10th Cir. 11/23/2001) (rejecting equal protection and due process arguments based on sentence disparity).

R. <u>Denial of petitioner's K.S.A. 60-1507 petition - (Ground Twenty)</u>

Petitioner has included a conclusory claim that the state district court erred in denying his K.S.A. 60-1507 petition. Doc. No. 1 at p. 32. The claim as stated provides no grounds for federal habeas relief.

S. <u>Cumulative trial errors - (Ground Seventeen)</u>

Petitioner asserts that the alleged errors he has identified when considered together provide sufficient grounds for habeas relief. The point of cumulative error review is to determine whether all actual errors, which are individually harmless, combine to render a trial unfair. <u>Hamilton v. Mullin</u>, 436 F.3d 1181, 1196 (10th Cir.) <u>cert. denied</u>, 549 U.S. 1023 (2006). The court has carefully reviewed this matter and concluded that petitioner was given a fair trial. Therefore, this claim is denied.

IV. CONCLUSION

In conclusion, for the above-stated reasons, the court shall deny petitioner's application for relief under 28 U.S.C. § 2254.

**IT IS SO ORDERED.**

Dated this 17th day of June, 2011 at Topeka, Kansas.

                    s/Richard D. Rogers
                    United States District Judge